## CUMMING and POLLOCK *v.* WILLIAMSON and others.

Where the owners of water lots executed a power authorizing their attorney to fill up and reclaim the same, and to raise money by mortgage of the premises that might be necessary to accomplish that object, or for the improvement of the estate; and the attorney in 1836 contracted for the filling of a part of the lots, the work to be paid for in cash, from time to time, as it progressed; and in 1840, after the work was done, the attorney being unable to raise money by mortgage of the premises to pay the balance due to the contractors, mortgaged a part of the premises to the contractors, to secure the payment of such balance: It was *held,* that the mortgage was a valid execution of the power.

One of the constituents was a married woman, and described in the power as residing in this State. The power was executed by her in Scotland and in the mortgage her residence was stated to be in Scotland. She was in Europe when her answer was put in, and it did not appear that she had been in this State since the date of the power: It was *held,* that she was a resident of Scotland, and the power valid under the act of 1835, relative to powers executed by non-resident married women.

Another of the constituents was a trustee under a marriage settlement, by which he was authorized to grant, bargain, sell, alien, and convey in fee simple, any of the real estate, and to invest the proceeds in stocks, &c., whenever the beneficiaries were minded to have it done: *Held,* that this did not authorize the trustee, with their assent, to mortgage any part of the estate to raise money for its improvement.

Liability of the separate estate of a married woman for debts contracted upon the credit of such estate, considered.

Authorities cited in relation to a married woman's capacity to execute a power of attorney, authorizing the sale of her lands. *In Note.*

April 15; April 29, 1843.

THIS was a bill to foreclose a mortgage executed by James N. Wells as the attorney of Charles A. Williamson, and Catharine H. his wife, Rupert J. Cochran, and Isabella M. his wife, Charles A. Williamson, trustee of Mrs. Cochran, and Bayard Clarke. Mr. and Mrs. Williamson and Mr. and Mrs. Cochran answered, denying the validity of the mortgage. The bill was taken as confessed by Clarke. The mortgaged premises are a part of a large tract in the sixteenth ward of the city of New-York, bounded by the Hudson river, which was owned by Mrs. Williamson, Mrs. Cochran and Bayard Clarke, as devisees of Mary Clarke, deceased. Previous to her marriage, Mrs. Cochran,

with the assent of her intended husband, vested her interest in a great portion of the tract, in the defendant Williamson, in trust for her separate use.   It was conceded that the premises in question were included in the marriage settlement.   On the 7th November, 1835, Williamson and wife, Williamson as trustee of Mrs. Cochran, Cochran and wife, and Bayard Clarke, executed a power of attorney to Wells, authorizing him, among other things, to fill up and reclaim all water lots or lands covered with water to the extent that was or might be permitted by grant, or permitted by law, and to make all piers or bulkheads that might be necessary *or in his opinion proper to be made* ; *and to raise money by mortgage of the premises* whereof the constituents were seized, or any part thereof, *that might be necessary to accomplish that or any other object of the estate,* and to execute all necessary papers for that purpose.

On the first day of April, 1836, the same parties entered into a sealed agreement with Wells, reciting the execution of the power of attorney and its objects, making it irrevocable for four years, and limiting the power to mortgage, to the undivided estate of the constituents.   It declares that the power shall be deemed to authorize Wells to execute mortgages for the purpose of raising moneys for the improvement of the estate, and for other objects specified in the power of attorney, but not to authorize *him to execute bonds in their names, but only to mortgage their estate as aforesaid.*   The power of attorney and indenture confirming it were both acknowledged in due form and recorded.   On the 27th day of September, 1836, Wells as the attorney of his constituents, entered into a contract with the complainants to fill up the defendant's water lots to the extent of three or four blocks on the river, and to fill up other low grounds on the same tract; payments to be made from time to time as the work progressed, and the whole to be completed in 1839.   After completing more than half the work, the complainants desisted by the request and direction of Wells, who found it impracticable to raise money to proceed with the contract.   They had received eight thousand dollars, and when the work was stopped, there remained due to them for the work done, at the contract price, about $29,500.   Wells made various

efforts to raise the sum on mortgage of the premises, without success. He employed an agent in London, with the same result. Finally he induced the complainants to terminate the contract and to take a mortgage for their demand, payable in a year with interest. The mortgage in question was thereupon executed by Wells, in the name and as the attorney of all his constituents. It was dated January 1, 1840, recites the contract with the complainants, the amount due to them and their consent to have the contract rescinded, and conveys to them a portion of the premises which the mortgagors owned in common, a part of which had been filled in and reclaimed from the river by the work done under the contract.

Williamson and wife and Mr. and Mrs. Cochran, in separate answers, contended that the mortgage was invalid as to their respective third parts of the premises.

The agent, Wells, was examined as a witness by the complainants, subject to an objection that he was interested in their favor.

*W. H. Harison,* for the complainants, insisted that the mortgage was fully authorized by the power of attorney; and that Wells was a competent witness. He exhibited his powers of attorney, and did not pretend that he had any other or greater authority.

*D. D. Field,* for the defendants.

1. The mortgage is void, because it is not warranted by the power of attorney given to Mr. Wells. The power declared him authorized " *to raise money by mortgage.*" He executed the mortgage to pay a precedent debt. This was not within the power, and the mortgage is void, both at law and in equity.

In support of this point, the counsel cited Story on Agency, 68, *et succ. ;* 2 Paige, 418 ; 2 Cowen, 195, *Wilson* v. *Troup,* (4 Kent's Com. 330, 4th ed. ;) *Sinclair* v. *Jackson,* (8 Cowen, 543 ;) 2 Term R. 169 ; *Blood* v. *Goodrich,* (12 Wend. 525 ;) *Rossiter* v. *Rossiter,* (8 Ibid. 494 ;) *Waldron* v. *Macomb,* (1 Hill, 111.)

2. On behalf of Mrs. Cochran and her trustee, and Mrs. Williamson, we insist that the mortgage is void, because it is not acknowledged by Mrs. Cochran and Mrs. Williamson. The power of attorney was executed in the State of New-York, and did not enable the attorney to pass their separate estates or interests. A power of attorney by a married woman is void, except in the case of her residence out of the state.

1 Rev. Stat. 758, §§ 10, 11, contains the provisions for the execution of conveyances by married women ; and sections 38 and 39, show that a power of attorney is not embraced within those provisions. The act of 1835, chap. 275, was passed to remedy this difficulty in the case of non-residents.

3. On behalf of Mrs. Cochran and her trustee, it is insisted, that the mortgage is void, because it is not authorized by the marriage settlement executed on the 4th of June, 1835, between Mr. and Mrs. Cochran and her trustee, and is in contravention of the trusts thereby declared.

The interest of the beneficiaries was inalienable except in the mode prescribed, and the consent of Mrs. Cochran could not enlarge the power, which was simply, to sell absolutely in fee simple.

1 Rev. Stat. 728, sec. 55. 58, and 60—65 ; 1 Ibid. 723, sec. 10. 13 ; 5 Paige, 586. 600 ; 16 Wend. 61 and 165 ; 20 Ibid. 437 ; 21 Ibid. 137 ; 22 Ibid. 483 ; Fletcher on Est. 66. 97 ; 14 Wend. 365 ; 13 Ibid. 218 ; 10 Vesey, 581 ; 1 Rawle, 231 ; Atherley on Marr. Sett. 335.

*Harison*, in reply.

According to the defendant's construction of the power, Wells could not incur the debt, and afterwards raise money to pay it. He gave the mortgage to the complainants, instead of giving it to A. B., and then carrying the money to the complainants. The debt here was contemporary ; it was not a precedent debt, in the sense of *Coddington* v. *Bay*, (20 Johns. R.)

If the counsel is right in his second point, it will unsettle half the titles in the State of New-York. From 1795 to this time, titles have very generally been conveyed under powers of attorney, executed by married women, and acknowledged in the

form prescribed for deeds, &c. The passage of the act of 1835, has no bearing. The legislature is not to construe laws. The act was unnecessary, and was probably passed upon the crude doubt of some lawyer.

THE ASSISTANT VICE-CHANCELLOR.—The first objection made to the mortgage is, that its execution was not authorized by the power of attorney to Wells. This objection is urged in behalf of Clarke, as well as the other defendants. But he having suffered the bill to be taken as confessed, in which the execution of the mortgage is set forth as being in pursuance of a power from him, is precluded from questioning that fact. The defendants insist, that the power of attorney authorized the execution of a mortgage for a single purpose, " *to raise money.*" That this mortgage was executed for a precedent debt, and that it is utterly void. They argue that it is a naked power, and that it must be strictly construed. The rule, in this respect, is thus expressed by Chancellor Kent, in his opinion, in *Wilson* v. *Troup*, (3 Cow. 200,)—" Courts of equity look to the end and design of the parties, in considering the extent of powers, and to a substantial rather than to a literal execution of the power." It is on this ground that the aid of courts of equity is continually invoked to supply the defective execution of powers, in cases where the inflexible rule of the common law would hold the execution inoperative. And this jurisdiction extends, as well to naked powers where there is a meritorious consideration, as to powers coupled with an interest. (See 2 Sugd. on Powers, 94—100.) Testing this case by the principle referred to, I think the power of attorney warranted the execution of the mortgage to the complainants. The end and design of the constituents was to improve their real estates, and especially by filling up their lots, which were covered by the water of the river. Their attorney was authorized to mortgage their lands to effect these objects. He was to raise money for that purpose. It is true, that he was not to contract for the labor to be paid in a mortgage, because that mode of payment would enhance the price. It was not the design of the parties to raise the money before contracting, or in anticipation of the

performance of the work. That course would involve the certain loss of interest, and the possible loss of the fund raised. The attorney proceeded in the mode ordinarily pursued. He made a contract with the complainants, by which they were to be paid in cash as the work advanced. No question has been made but that the terms were advantageous to the defendants. The change in the financial condition of the country, and in the demand for real estate, from 1836 to 1839, made it very desirable to the defendants to discontinue the work. A large cash debt was due to the complainants on the contract. The attorney, after endeavoring in vain to raise the money from others to pay this debt, mortgaged to the complainants. This differed from a literal execution of the power in one particular only. Instead of executing a mortgage for $29,500 to some money lender, and then carrying the money over to the complainants, and paying their debt, he executed a mortgage for the same debt to the complainants. The effect upon the defendants' interests is precisely the same. If the former course had been adopted, their estate would have been incumbered in the same manner that it now is. If the complainants and Wells had arranged to have the latter execute a mortgage to some broker who would deliver the money to Wells, and he to the complainants; and then the complainants would forthwith return the money to the broker, and he assign the mortgage to them, would not the power have been pursued to the very letter on consummating such an arrangement? The defendants themselves would never have questioned it. I cannot perceive why such an execution of the power is more conformable to its intent and spirit, than the mode adopted in this case. It appears to me that the execution of the mortgage was a substantial and valid execution of the power.

A reference to a few of the multitude of cases on the subject, will illustrate the rule of equity in regard to powers.

In *Roberts* v. *Dixall*, (2 Eq. Cas. Abr. 668, pl. 19. S. C. 2 Sugd. on Powers, App. No. 17,) a father was empowered in a marriage settlement, to appoint and divide the estate among his children. Having two children he appointed the whole estate to the elder and charged upon it the payment of a gross

sum to the younger child. This was held in equity to be a good execution of the power according to its substance and intent.

In *Long* v. *Long*, (5 Ves. Jr., 445,) where on a settlement, power was given to the father to charge the estate with such sums for the benefit of younger children as he should think fit, and by his will he directed the estate to be sold, and gave the money to his children, giving to the eldest son a very small portion ; Lord Rosslyn decided, that the appointment was in substance exactly what he had a right to do.

In *Bullock* v. *Fladgate*, (1 Ves. & B. 471,) Sir William Grant held, that in equity a power to appoint an estate directed to be bought with money which was to arise by the sale of another estate directed to be sold, might be exercised over the estate directed to be sold, in the same manner as it might be over the estate directed to be purchased. In *Miller* v. *Chance*, (3 Edw. Ch. R. 399,) the trustees of the Masonic Hall, were authorized by the statute incorporating them to mortgage the premises bought by them, with the building or buildings thereon, if in their opinion it should be necessary, for the purpose of creating such building or buildings thereon. After the buildings were erected, the trustees executed mortgages to persons who had bestowed work and materials in their erection. It was objected, that under the power the mortgages could only be executed in order to create the buildings and before their erection, but the Vice-Chancellor held that the mortgages were valid within the spirit and intent of the statute.

The case of *Waldron* v. *Macomb*, (1 Hill's R. 121,) cited by the defendants, is not applicable. It was a case at law, where under a power to executors to sell, they undertook to convey in fulfilment of a contract of sale made by the ancestor of their testator.

In the view which I have taken, it is not material to determine the competency of Wells as a witness for the complainants. It is my impression, that he was not liable personally on the contract with the complainants, (see *Jones's Devisees* v. *Carter*, 4 Hen. & Mun. 184; 2 Hilliard's Abr. 283,

§ 31 ;) and therefore, that he was a competent witness in their behalf.

II. The defendants insist, that the mortgage is void as to Mrs. Williamson and Mrs. Cochran, because they were residents of this state, and could not, therefore, execute any power which would authorize the conveyance of their real estate.

The conclusion, to which I have arrived under the next point discussed, renders it unnecessary that I should consider the legal proposition involved in this point, in reference to Mrs. Cochran's interest. And as it regards the share of Mrs. Williamson, I do not think that the objection is well founded in fact. The agreement, reciting and confirming the power, was executed by Mr. and Mrs. Williamson, at Edinburgh, in Scotland, several months after its date. They are described in it as residents of Geneva, New-York; but in the mortgage, their residence is stated to be in Edinburgh, and they are so described in the bill of complaint. Their agent, who verifies their answer, sets forth in his affidavit, that they are, at the time of making it, in Germany. It does not appear that they have resided, or been in the United States, since the date of the agreement. It is a reasonable inference from these facts, that they were residents of Scotland at the time they executed the agreement. This brings the case within the statute of 1835, (Laws of 1835, p. 315,) which recognizes the validity of powers of attorney for the conveyance of real estate by married women, resident out of the state.(a)

III. In behalf of Mr. and Mrs. Cochran, and their third part of the mortgaged premises, it was further objected that their marriage settlement did not authorize the trustee of Mrs. C. to execute any mortgage, and that the mortgage in question was in contravention of the trusts declared in the settlement. By that instrument, the trustee was authorized, whenever Mr. and Mrs. Cochran were minded to have any of the real estate "*bar-*

---

(a) On this subject see 1 Rev. Stat. 758, §§ 10, 11 ; 762, §§ 38, 39 ; Laws of 1835, Ch. 275, p. 325 ; 1 Revised Laws, 369, §§ 1, 2 ; Colonial Laws of N. Y., 82, (Van Schaack's edition,) Act of October 30, 1710 ; ibid. 611, Act of February 16, 1771 ; *Jackson* v. *Gilchrist,* 15 Johns. 109 ; *Bool* v. *Mix,* 17 Wend. 129 ; *Constantine* v. *Van Winkle,* 6 Hill, 177 ; 2 Kent's Comm. 151—2d Ed.

*gained, sold, aliened and conveyed in fee simple,* and the proceeds arising from such bargains, sales, conveyances and grants, invested in stocks, placed out on securities, or laid out" in other lands, &c., and should signify such their mind and desire in writing signed in the presence of a witness; then the trustee might grant, bargain and convey, &c.

It is impossible to hold upon this instrument, that the trustee was authorized to mortgage the premises for any purpose. There is a dictum of Lord Macclesfield, in 3 P. W. 9, (*Mills* v. *Banks,*) that a power to sell *and raise a sum* of money, implies a power to mortgage; and such seems to have been the partial decision of Lord Cowper eighteen years before, in the same case. But as Sir Edward Sugden observes, (1 Sugd. on Powers, 538,) "this cannot be treated as a general rule; for the intention of the parties and the nature of the case may render it apparent that a sale out and out *only* and not a mortgage is within the authority." Here the disposition of the proceeds to arise from the alienation, precludes the supposition that a mortgage was ever within the intention of the parties delegating the power. The argument of Judge Cowen in the case, in 1 Hill, before cited, is clear and convincing on the question of intention in this case. So far as it affects the interest of Mrs. Cochran in the premises, I must hold that this mortgage is inoperative. The legal estate in fee was vested in Williamson on a trust which did not authorize him to mortgage. No consent or request of Mr. and Mrs. Cochran could confer upon him an authority to deviate from the terms of that trust. Nor could they institute any title in the premises, except in pursuance of the trust deed. (1 Rev. Stat. 730, §§ 63. 65;) *Wood* v. *Wood,* (5 Paige, 600;) *Hawley* v. *James,* (16 Wend. 164–5, per Bronson, J.)

I do not conceive that the complainants are therefore without remedy for the recovery of their debt against the estate of Mrs. Cochran. Her marriage settlement contains no restriction upon her power to deal with the property. And however it may be in regard to the real estate, under the provisions of the Revised Statutes which prohibit alienations in contravention of the trusts thereby authorized, her separate estate is in equity, chargeable with her debts contracted on the credit of it, as if

she were a *feme sole*. *North American Coal Company* v. *Dyett*, (7 Paige, 9 ; 20 Wend. 570.)

The premises of Williamson and wife, and B. Clarke, are not liable for more than two-thirds of the debt. If the mortgage had been executed by them personally, it would have subjected their interest, in the land mortgaged, to the whole debt. But their attorney was not authorized to incumber the land, except for the specific purpose of improving it, and therefore could not charge it by way of securing the debt of Mr. and Mrs. Cochran.

The complainants are entitled to a decree against the undivided interests of Williamson and wife, and B. Clarke, in the mortgaged premises, for the payment of their costs of suit, and two-thirds of the mortgage debt and interest. The bill must be dismissed as to Mr. and Mrs. Cochran, but without costs, and without prejudice to the complainants' claim against them, or their joint or separate estate, for the remaining third part of their debt and interest.