JAMES SHAW, as Trustee, etc., Respondent, *v.* THE SARANAC HORSE NAIL COMPANY et al., Appellants.

The board of directors of a manufacturing corporation authorized the issuing of coupon bonds secured by mortgage on its real estate "for the purpose of raising money to pay off the floating debts of the company," and one W. was authorized to negotiate the bonds at a price not less than par and accrued interest. Some of the bonds issued pursuant to the resolution were sold by the agent in precise accordance with such authority and the proceeds received by the corporation; others were pledged as collateral security for prior debts. The corporation became insolvent, the mortgage was foreclosed and the property sold. In proceedings to determine as to the application of the proceeds, *held*, that W. had no authority to pledge the bonds, but was bound to sell them for money or at least so to dispose of them as to pay debts of the company, and, therefore, that the holders of the bonds so pledged were not entitled to share in the proceeds.

Reported below, 78 Hun, 7.

(Argued December 10, 1894; decided December 18, 1894.)

Appeal from order of the General Term of the Supreme Court in the third judicial department, made May 8, 1894, which affirmed an order of Special Term modifying an order of Special Term which modified the report of a referee and confirmed the same as modified.

In January, 1883, the Saranac Horse Nail Company owed a large amount of debts, and its board of directors duly resolved to issue coupon bonds of the company to the amount of $30,000, of the denomination of $500 each, secured by mortgage upon its real estate, "for the purpose of raising money to pay the floating debts of the company," and Andrew Williams was authorized to negotiate the bonds at a price not less than par and accrued interest. In pursuance of this authority, Williams, in May, 1883, sold to Parker, Foote, Ryan and Purdy, the respondents upon this appeal, bonds amounting in the aggregate to $6,500, and received the full amount thereof; and no question is made in this proceeding that those bonds are valid and legal obligations for the full amount due thereon against the company. In the same year he sold to Town, Farrell, Moffett and Ellis bonds to the aggregate amount of $7,000, and received full value for such bonds, and no question is made that the bonds were, in the hands of the persons to whom they were sold, valid obligations against the company. In 1885 the company was indebted to the Keeseville National Bank to the amount of $5,000, which indebtedness had been contracted for money actually received from the bank by the company between one and two years before; and the bank was pressing for payment of the indebtedness and for additional security. Whereupon the note of the company was given, indorsed by Williams, and he delivered to the bank, as collateral security for the note, bonds amounting to $5,000. In the same year the company was indebted to the Iron National Bank of Plattsburgh, in the sum of $3,850, for money had by the company some time before; and a note was made by the company for that sum, and as collateral security thereto Williams delivered to the bank bonds of the company amounting to $4,000. About the

same time the company was indebted to the Vilas National
Bank of Plattsburgh for money had by the company some
considerable time before, and to secure that indebtedness a
note was given to it by the company for $7,250, and bonds of
the company of the par value of $7,500 were delivered to the
bank by Williams as collateral security to that note.

The company became insolvent in 1886, and afterwards the
mortgage upon its real estate, given to secure its bonds, was
foreclosed and the real estate sold, and the proceeds of the
sale amounted to about $10,000. There was a reference to a
referee to determine how many bonds had been issued and
were outstanding which were entitled to share in such pro-
ceeds. The referee, after hearing the parties interested,
reported that all the bonds above mentioned, except those
held by the respondents, belonged to the estate of S. F. Vilas,
deceased, which is represented by his administrators, the
appellants, and that all such bonds, to the extent of the interest
of that estate in them, were entitled to share *pro rata* in such
proceeds. Upon the presentation of his report for confirma-
tion at the Special Term, it was held that the only bonds
entitled to share in the proceeds of the sale were those held
by the respondents, and an order was there entered to that
effect. From that order the administrators of Vilas appealed
to the General Term, where it was affirmed, and then they
appealed to this court.

*G. H. Beckwith* for the appellants. The agreement of May
18, 1886, was not binding upon the administrators or their
*cestui que trust*. (Laws of 1875, chap. 611, § 25; *Hardman*
v. *Sage*, 124 N. Y. 25.) It was error for the court to exclude
from participation in the proceeds of the sale of the mort-
gaged premises any of the bonds held by the appellants, par-
ticularly the bonds of Mrs. Town purchased by Mr. Vilas in
his lifetime, and the bonds purchased by Mr. Williams of Far-
rell, Moffett and Mrs. Ellis, and subsequently transferred to the
administrators. (*Duncomb* v. *N. Y. & N. R. R. Co.*, 84 N.
Y. 190; *Gunther* v. *Myer*, 22 N. Y. Supp. 50; 138 N. Y.

654; 19 id. 207; 26 id. 410; *Sickels* v. *Richardson*, 23 Hun, 539; *Brookman* v. *Metcalf*, 32 N. Y. 591; *Bank* v. *Hodge*, 35 id. 65; *Platt* v. *Bebee*, 57 id. 339; 42 id. 490; 40 Barb. 279; 63 id. 215–237; 3 Sandf. 222; *Cromwell* v. *Co. of Sac*, 96 U. S. 51–60.) The conclusions arrived at by the court at Special Term are based upon erroneous assumptions of fact, and overlook plain provisions of statute, and hence are erroneous. (124 N. Y. 25; 71 id. 597; 79 Hun, 261; 6 id. 55.)

*T. F. Conway* for respondent. The respondents Purdy, Parker, Ryan and Foote are entitled to be paid in full the bonds held by them with interest from the proceeds of the foreclosure sale, before any part of such proceeds are applied in payment of the bonds held by the appellants. (*Blakison* v. *Dudley*, 5 Duer, 373; *Sims* v. *U. S. T. Co.*, 103 N. Y. 472–489; *Mangam* v. *City of Brooklyn*, 98 id. 595; *McGaffin* v. *City of Cohoes*, 74 id. 387–389; *Corning* v. *McCullough*, 1 id. 47; *Craighead* v. *Paterson*, 72 id. 279–284; *Wood* v. *Goodridge*, 6 Cush. 117; *Hodge* v. *Combs*, 1 Black, 192; *Easton* v. *Clark*, 35 N. Y. 225; *Ritch* v. *Smith*, 82 id. 627; *M. Bank* v. *Livingston*, 74 id. 223; *Duncomb* v. *N. Y., H. & N. R. R. Co.*, 84 id. 190; *U. S.* v. *Rice*, 92 U. S. 281.) The $7,000 bonds sold and now presented by the administrators, are not entitled to share in the distribution until the respondent's bonds are paid in full. (Laws of 1875, chap. 611; *Barlow* v. *Myers*, 64 N. Y. 41; *Lawrence* v. *Fox*, 20 id. 268; *Saunders* v. *Riley*, 105 id. 12; *Paulding* v. *C. S. Co.*, 94 id. 340; *Granger* v. *Crouch*, 86 id. 494.) Plaintiff, as trustee, was clearly entitled to the commissions allowed him in the court below. (*U. S. T. Co.* v. *N. Y., W. S. & B. R. Co.*, 101 N. Y. 478; Code Civ. Pro. § 3220; *King* v. *Talbot*, 40 N. Y. 76, 96.) The trustee is not chargeable with interest on the funds coming into his hands and held by him in trust, and it was properly so held by the court below. (*Town of Lyons* v. *Chamberlain*, 25 Hun, 49; *King* v. *Talbot*, 40 N. Y. 96.)

EARL, J. We are of opinion that the referee was right in holding that the bonds sold and delivered to Town, Farrell,

Moffett and Ellis, and subsequently transferred to Vilas, or his administrators, were entitled to share *pro rata* in the proceeds of the sale of the real estate. Those bonds were issued in precise accordance with the authority conferred upon Williams, and the company received the full amount thereof in cash. They have never been paid or discharged by the company, and in the hands of the administrators of Vilas, to the extent of their interest therein, they were valid obligations against the company; and we can perceive no reason, legal or equitable, why they should not share in the proceeds of the real estate.

As to the bonds delivered to the banks for collateral security, a different question is presented. Those bonds were pledged to the banks to secure prior debts of the company. Williams had no authority to pledge the bonds. His sole authority was to negotiate them at a price not less than par and accrued interest, for the purpose of raising money to pay the floating debts of the company. He was bound to sell the bonds for money, or at least so to dispose of them as to pay the debts of the company. If he pledged them they paid no debts of the company, but rather increased than diminished such debts. It has been frequently held that an authority to sell does not authorize a pledge or mortgage. (*Cumming* v. *Williamson*, 1 Sand. Ch. 17; *Waldron* v. *McComb*, 1 Hill, 111; *Bloomer* v. *Waldron*, 3 id. 361; *Albany Fire Ins. Co.* v. *Bay*, 4 N. Y. 9; *Merchants' Bank* v. *Livingston*, 74 id. 223; Wright on Agency, 79; Meacham on Agency, sec. 356; Story on Agency, 78.) Therefore, if the banks as pledgees were claiming to share in the proceeds of the mortgage sale, their claim could be successfully resisted on the ground that the bonds had not become legal obligations against the company. Nothing has happened since the bonds were pledged to render them valid and legal. The pledge has never been ratified by the company, and the debts have never been paid, and the bonds have not accomplished the purpose for which they were authorized to be issued. Williams and the administrators of Vilas, by an arrangement between them and for their own pro-

tection as stockholders of the company, purchased and took an assignment of these debts from the banks, and with the debts took a delivery of the bonds held by the banks as collateral security.   Williams afterwards assigned his interest in the debts and bonds to the administrators, and they, therefore, hold the debts as assignees, and hold the bonds as the banks held them, as collateral security to the debts.   The bonds are invalid in their hands as they were invalid when held by the banks, and we see no ground whatever upon which they can legally claim to share in the proceeds of the mortgaged real estate.

Our conclusion, therefore, is that the orders of the General and Special Terms should be so modified as to divide the funds held for distribution *pro rata* between the respondents and the appellants, so far as the appellants represent bonds sold, as found and determined in the report of the referee, and as thus modified the report of the referee should be confirmed, and the orders affirmed, without costs to any of the parties in any of the courts.

All concur.

Ordered accordingly.