[No. 12065. Department Two. April 14, 1915.]

VANCOUVER TRUST & SAVINGS BANK, *Respondent*, v. UNION WOOLEN MILLS, *Appellant.*[1]

CORPORATIONS—DEED OF TRUST—FORECLOSURE. Where a corporation in embarrassed circumstances, but still a going concern, issued negotiable bonds for the purpose of selling the same to pay indebtedness and obtain money to continue operations, and to secure same executed a deed of trust of the corporate properties to a trustee for the bondholders, and such trustee, to enable the corporation to meet current necessities pending the sale of the bonds, advanced money to the corporation as a loan on the pledge of the bonds, such trustee as pledgee of the bonds had priority over the general creditors and was entitled to foreclose its pledge.

CORPORATIONS — DEED OF TRUST — BOND ISSUE — ASSIGNMENT FOR BENEFIT OF CREDITORS. The execution of a deed of trust by a corporation to secure its bonds, issued with a view to their sale for the purpose of changing due obligations into time obligations and of raising funds for current expenses, and the assignment of the bonds to the trustee bank, which made advances thereon to meet temporary necessities of the corporation pending the sale of the bonds, the trust deed reciting that the trustee should have no responsibility for

[1]Reported in 147 Pac. 643.

the delivery of any of the bonds, and that it assumed no responsibility other than to hold the deed as trustee for the purchasers of the bonds, did not constitute an assignment for the benefit of creditors nor impose on the trustee the duty of selling the bonds.

Appeal from a judgment of the superior court for Clarke county, Back, J., entered October 9, 1913, upon findings in favor of the plaintiff, in an action to foreclose a pledge, tried to the court. Affirmed.

*Reed & Bell, Jas. P. Stapleton, McMaster, Hall & Drowley,* and *Miller, Crass & Wilkinson,* for appellant.

*Geo. B. Simpson* and *H. L. Parcel,* for respondent.

FULLERTON, J.—The respondent, the Vancouver Trust & Savings Bank, brought this action against the Union Woolen Mills and its trustee in bankruptcy, W. D. Sappington, to foreclose upon certain bonds claimed by the bank to have been issued by the Union Woolen Mills and pledged to the bank as security for a loan. Issue was taken on the allegations of the complaint and a trial had, which resulted in a decree of foreclosure and order of sale. The trustee in bankruptcy appeals.

The facts are these: The Union Woolen Mills is a corporation organized under the laws of the state of Oregon. Its business was manufacturing woolen goods and fabrics, and for that purpose it had constructed two separate plants, the one located at the town of Union, in the state of Oregon, and the other at the town of Washougal, in the state of Washington. The business of the concern proved not to be prosperous, and it became largely indebted. In the early part of the year 1912, these debts became pressing, and the corporation had difficulty in procuring means necessary to carry on its current business. At this stage of its affairs, the directors of the corporation consulted with its principal creditors as to the best means of relieving the corporation from its financial straits, and it was concluded to issue $50,000 in 20-year negotiable coupon bonds of the denomina-

tion of $100 each, secured by a deed of trust upon the cor-
poration's real and personal property. The respondent,
Vancouver Trust & Savings Bank, was not at that time a
creditor of the corporation, but at the suggestion of one of
the principal creditors, it was solicited to become a trustee
for the bondholders, and to hold the title to the property
for their benefit. The respondent, after investigating the
properties of the corporation, consented to act as such
trustee, and consented to make an advancement on the secur-
ity of the bonds in a limited sum and for a limited time to
meet the current expenses of the corporation pending the
sale of the bonds, such advancement to be repaid when the
bonds should be sold. Later, and on March 4, 1912, the
board of directors of the corporation duly passed and caused
to be spread upon its records a resolution authorizing the
issuance of the bonds and deed of trust contemplated, which
resolution was submitted to the stockholders of the corpora-
tion at their regular annual meeting held upon the same day
and by them duly approved.

Pursuant to the resolution, the contemplated bonds were
executed payable "to the bearer, or if registered, to the
registered holder thereof," together with a deed of trust
running to the respondent as trustee, covering the entire
property of the corporation. The bonds and deed were de-
livered to the respondent on March 22, 1912, at which time
a written agreement was entered into between the corporation
and the bank, reciting the terms and conditions upon which
the bonds and deed were to be holden by the bank. Among
these conditions was the following: "And the party of the
second part [the Vancouver Trust & Savings Bank] agrees
to extend a loan of $7,500 for 90 days to the party of the
first part [the Union Woolen Mills] and hold and accept as
security therefor the Union Woolen Mills Company's note
and $50,000 of the bonds issued under said mortgage or
deed of trust, as aforesaid, which is to be a temporary ad-
vancement, pending the sale and delivery of said bonds."

On the delivery of the bonds and mortgage to it, the bank advanced to the use of the Union Woolen Mills the amount agreed to be so advanced in the written agreement, and shortly thereafter, on the oral agreement that the bonds should stand pledged for the same, made a further advancement of $1,200.

The board of directors of the mill company undertook to sell the bonds through dealers engaged in that business, but without success, and in fact none of them were ever sold. The business of the company did not subsequently improve, and on October 12, 1912, it was adjudged a bankrupt in the district court of the United States for the district of Oregon. The present action was begun in the month of December following.

If we understand the contentions of the appellant, he claims that the creditors of the corporation were the sole beneficiaries of the deed of trust; that upon the delivery of the deed to the respondent bank, the bank became their trustee, and thereafter neither the corporation nor the bank had authority to dispose of the bonds except by sale directly to some purchaser, and that then the proceeds of such sale must be paid to the bank and applied by it upon the obligations due the creditors. Seemingly, also, it is contended that the bank alone could issue or make delivery of the bonds, and hence any attempt on its part to deliver to itself or retain possession of them in pledge as security for any advancement made by it is void as against the rights of the creditors.

But it is our opinion that the appellant has misconstrued the effect of the deed of trust. The deed is set out in full in the record. Its length prohibits its being reproduced here, but it contains no extraordinary conditions. Its purpose was to secure the payment of the bonds in the hands of those who might become purchasers thereof, and all of its conditions were directed to that end. It contains, it is true, by way of recital, the resolution of the board of directors authorizing the issuance of the bonds. But that resolution,

even were it a material circumstance, does not declare that the sole purpose of the bond issue is to meet the obligations of the corporation. It is one of the purposes, according to the recital in the resolution, but other purposes were for the "development and enlargement of its business, and for all other purposes connected" with such development and enlargement. If, therefore, the recital with respect to the creditors could be held to confer on them some interest in the disposition of the bonds, it could not be a paramount interest, or such an interest as would preclude the corporation from disposing of the bonds for the other purposes recited. Nor is the contention tenable that the bonds were to be delivered to the bank to be issued and sold by it, and not by the directors of the corporation. Such a theory is contrary to the actual purpose and intent of the parties as shown by the extrinsic evidence, and we think contrary to the intent expressed in the deed of trust. By that instrument it is expressly declared that the bank assumed no responsibility whatever other than to hold the instrument as trustee for the purchasers of the bonds. It did not agree to undertake the sale of the bonds, or to assist in their sale. The only agreement it made in this regard was to take the bonds in pledge as security for an advancement to be made, and to surrender them from its lien of pledge in case of their sale and the return to it of the amount of the advancement it made in pursuance of its pledge. The instrument itself provided:

"It is further understood and agreed that all recitals herein contained are made on behalf of the party of the first part, and the party of the second part assumes no responsibility as to the correctness of any statement herein contained; said party of the second part, and its successors shall have no responsibility as to the validity of this deed of trust or mortgage, nor as to the execution or acknowledgment hereof, nor as to the amount or extent of the security afforded by the property conveyed by this deed of trust or mortgage, nor for the delivery of any such bonds, and said trustee shall

not be in any way liable for the consequence of any breach on the part of the said party of the first part of the covenants herein contained or for any other act or thing hereunder, except for its, his or their own willful neglect or misconduct."

The deed of trust was, therefore, in no sense an assignment for the benefit of creditors. It created no lien upon the property of the corporation in their favor. The scheme as a whole was one commonly adopted by concerns in like circumstances; its purpose was to change its due obligations into time obligations, to procure funds to meet its current necessities, and thereby permit it to continue as a going concern. There is no question that the parties to the transaction acted throughout in the utmost good faith. At the time of the execution of the bonds, the corporation was a going concern, owning property believed to be of a value greatly in excess of its obligations. It was believed by the directors of the corporation and by the officers of the bank that its bonds could be sold. On the faith of this belief the bank consented to act as trustee of the deed of trust, and to advance to the use of the corporation a sum sufficient to meet its immediate necessities and hold the bonds in pledge until their sale and the return of its advancements. It performed its agreement and we can see no reason why the transaction was not legitimate, and why it is not entitled, since the contemplated scheme failed of fruition, to realize upon its securities.

Of the many cases cited by the appellant in support of his contentions but one requires special notice. In the main the cases cited differ so widely in their facts from the facts of the present case as to render them of but little if any assistance as guides to a correct decision of the questions involved. The case excepted is that of *Shaw v. Saranac Horse Nail Co.*, 144 N. Y. 220, 39 N. E. 73, and is noticed because the appellant affirms that it cannot be differentiated in its facts from the present case. In that case it appears that the company

named owed a large amount of debts, and that its board of directors duly resolved to issue coupon bonds secured by mortgage upon its real estate to raise money to pay such debts.  The mortgage ran to one Andrew Williams, and the bonds were delivered to him to be negotiated at not less than par with interest.  In pursuance of his authority, Williams, in May 1883, sold certain of the bonds, and later on in the same year sold certain others, receiving for each lot sold the full value thereof in accordance with the terms of his trust. Subsequently he pledged others of the bonds to creditors of the company as security for a past indebtedness, receiving no other consideration for the pledge.  The company later became insolvent, whereupon the mortgage was foreclosed and the mortgaged property sold, the sale bringing an insufficient sum to redeem the bonds sold in accordance with the trust.  In a contest between the respective holders of the bonds over priorities, the court held that all of the actual purchasers stood on an equal footing and that the proceeds of the sale should be divided among them *pro rata*; holding further that the pledgees were not entitled to share in the distribution.  This case seems to us to be correctly decided, but in our opinion it is far from sustaining the contention of the appellant in the present case.  Here there has been no sale of the bonds, and no question of priority between purchasers and pledgees is presented.  The sole question here is, could the company issuing the bonds, and which alone had control over their disposition, pledge them to secure an advancement to the company under an agreement made prior to their issuance.  Clearly a decision that actual purchasers of bonds so issued have a priority over pledgees holding them as security for a past indebtedness cannot be authority on such a question.  True the court did say in the course of the opinion that Williams' authority was limited to selling the bonds, and that under such an authority he could not pledge them to secure a past indebtedness, but even this does not

meet the present issue. There was here no such restriction on the company as to the manner of their disposition.

Our conclusion is that the judgment should stand affirmed, and it will be so ordered.

CROW, ELLIS, MOUNT, and MAIN, JJ., concur.