HOWARD E. SANGER *vs.* WILBERT D. FARNHAM, Jr., trustee, & others.

Middlesex.    December 2, 1914. — December 31, 1914.

Present: RUGG, C. J., BRALEY, SHELDON, DE COURCY, & CROSBY, JJ.

*Trust,* Duties of trustee. *Devise and Legacy. Words,* "Practicable."

A testator by the residuary clause of his will divided the residue of his estate equally between his son and his grandson and directed that, "as soon as practicable after my decease and such division shall have been made my trustees

shall pay to my said son the sum of five thousand dollars in cash or its equivalent; the income of the remainder of his half shall be added to the principal as it accrues and at the expiration of five years from the date of said payment of five thousand dollars all the principal and accretions thereto shall be paid to my son and the trust as to him closed." The trustees were given power to sell but not to mortgage real estate. A part of the residue consisted of real estate appraised at $9,000. There was not enough personal property in the hands of the executors to pay the son $5,000 without a sale of real estate. The son agreed to take the real estate as a part of his half and the balance in personal property and agreed to a sale of the real estate. The trustees sold the real estate as soon as they could, which was within two years from the testator's death, and thereupon paid to the son the balance of the $5,000 to be paid to him in cash. In a suit in equity by the son to fix the date in five years from which the trust for the plaintiff should be terminated and the remaining part of his half of the residue should be paid to him, it was *held*, that there had been no unnecessary delay, and that the payment to the plaintiff of the balance of the $5,000 in cash had been made "as soon as practicable" after the testator's decease, thus fixing the time from which the five years of continued existence of the trust were to run.

A power to sell real estate given to the trustees under a will for the purpose of making a division of the property of the testator does not include a power to mortgage the real estate.

BILL IN EQUITY, filed in the Probate Court for the county of Middlesex on June 13, 1913, praying for an order fixing the date five years after which the trust for the benefit of the plaintiff under the will of his father, Warren Sanger, must be terminated.

In the Probate Court the case was heard by *McIntire,* J. The material clause under the will of Warren Sanger is quoted in the opinion. The judge made a decree "that the time when it became practicable after the decease of the testator for the trustees to have paid over the sum of five thousand dollars in cash to said Howard E. Sanger as directed by said will was August 10th, 1909, and in five years from that date according to said will and intention of the testator, the remaining sum held in trust should be paid over to the said Howard and the trust as to him terminated."

Paul Allen Sanger, a grandchild of Warren Sanger, between whom and the plaintiff the residue of that testator's estate by the terms of his will was to be divided equally as stated in the opinion, appealed from the decree.

The appeal was heard by *Hammond,* J., who made certain findings of fact, including the facts stated in the opinion, and reported

the case for determination by this court, concluding his report as follows:

"At the time of the division above mentioned there was in the possession of the trustees $17,000 worth of personal property and this house appraised at $9,000, in all, $26,000. The plaintiff could have said, 'I insist upon having half of that personal property and I am willing to take half of the real estate and that is all I am willing to do.' The trustees I find were not inclined to make an agreement that way and the petitioner then said, 'Very well, I will take the $9,000 worth of real estate; I want the money now and I will take $9,000 in real estate, the house, and the balance in personal property.' The balance of the personal property was less than $5,000. When the petitioner made that agreement, while there is nothing said in it, I think he agreed to the consequences of it, and one of the consequences was that the trustees did not have in their hands enough to pay this $5,000, and he impliedly, by that agreement, agreed to wait until it was practicable to raise the balance of the $5,000 out of that real estate. I do not think that the time at which the trustees were to pay the $5,000 arrived until the last payment which they made to the plaintiff, to wit, Nov. 15, 1910. I find on this evidence that the trustees did not have the $5,000 in cash or other personal property in their hands when they paid him $3,000, and that they could not have paid it out of his share unless they had sold or mortgaged this real estate. I think the last payment, November 15, 1910, was as early as they could obtain the money with which to pay the balance of the $5,000. They paid it as soon as the property was sold, and that is less than two years from the time when the testator died, and I find that the date when it became practicable to pay the $5,000 was not earlier than November 15, 1910. With the consent of the parties I report the case for the consideration of the full court."

*S. Bell,* (*A. F. Ray* with him,) for the plaintiff.

*G. A. A. Pevey,* for the defendants.

BRALEY, J. By the residuary clause the testator divided his remaining estate into two equal parts for the benefit of his son and grandson and directed that, "As soon as practicable after my decease and such division shall have been made my trustees shall pay to my said son Howard the sum of five thousand dollars

in cash or its equivalent; the income of the remainder of his half shall be added to the principal as it accrues and at the expiration of five years from the date of said payment of five thousand dollars all the principal and accretions thereto shall be paid to my son Howard and the trust as to him closed." It is manifest that the earlier the division, the sooner the son and petitioner would receive the first payment, and the time from which the five years were to run when the remainder of the principal became payable would be accelerated. The question for decision is, When did it become practicable for the trustees to make distribution?

A part of the residue consisted of real property and before a division could be made under the scheme of the will and the trust fund created it would have to be converted. The trustees accordingly are authorized to sell and to invest the proceeds in such manner as they shall deem best. The trustees also were the executors, and until the settlement of the estate it could not be finally determined how much personal property would fall into the trust. The plaintiff, who appears to have been in necessitous circumstances, requested the trustees upon their appointment to make a division and pay to him the first $5,000, and to raise the money by a mortgage on the real estate. It is to be inferred that this request was on the ground that the balance shown by the executor's first account was only a trifle more than half of the amount required.* The refusal of the trustees was justified.

The power of conversion being "out and out," they could sell but had no authority to mortgage. *Kent* v. *Morrison,* 153 Mass. 137, 139. It moreover was only when the estate had been closed, and the balance of the personal property had been transferred to themselves as trustees, that the residue and trust fund was capable of ascertainment. By the agreement which thereupon followed between the beneficiaries with the assent of the trustees, the plaintiff with full information as to the assets of the trust was to take as part of his share the real estate at a fixed valuation. If this had not been done no division until the realty had been turned into money could have been made. The plaintiff was not obliged to enter into the agreement. It was open to him to demand half of

---

\* The balance in the hands of the executors, as shown by this account, was $2,535.30.

the personal property with the acceptance of half of the real estate as his share. But not having done so, he must be presumed to have known that a sale must take place before the first payment would become due. The power to convert remained in the trustees for the purposes of the trust which would be only partially executed, and the single justice expressly found, that the plaintiff's share could not have been fully satisfied except by using a part of the proceeds of the sale.

The settlement was acted upon by all parties, yet it was not until something more than a year had elapsed that the trustees, with the consent in writing of the plaintiff, effected a sale and were for the first time enabled to carry out the provisions of the will. If, as the plaintiff now urges, there was unnecessary delay, it is chargeable to his own voluntary conduct and is not due to any delinquency of the trustees. The time of settlement under the finding appears to have been November 15, 1910, when the last payment immediately following the sale was made to the plaintiff. It was not until then under the circumstances, that they were able to obtain the money, and the execution of the trust became "practicable."

The decree of the Probate Court fixing August 10, 1909, as the date from which the limitation of five years is to be computed is to be modified by the substitution therefor of November 15, 1910, and when so modified it is affirmed.

*Ordered accordingly.*