[No. 12734.  Department One.  May 20, 1916.]

DAVID FRASER, *Respondent*, v. HOME TELEPHONE & TELEGRAPH COMPANY, *Appellant*.[1]

CORPORATIONS—AGENCY—"UNDERWRITERS." An "underwriter" of the stock and bonds of a telephone company is not an agent of the company, as a matter of law; as underwriting in this sense is a purchase together with a guaranty of a sale of the bonds, by one who sells in his own interest only.

SAME—AGENCY BY ESTOPPEL—UNDERWRITERS. A telephone company is not estopped to deny the agency of an underwriter of its stocks and bonds from the fact that it held him out, and permitted him to advertise, as an underwriter to one who did not know what that term meant and therefore could not have acted upon it as a representation that he was an agent.

SAME — AGENCY —"UNDERWRITERS"— EVIDENCE — SUFFICIENCY. A telephone company cannot be held for the acts of an underwriter of its stocks and bonds, as its agent, in failing to deliver stock sold and converting the money paid therefor, where no representation was made that he was an agent of or ever represented the corporation, and it appears that he had merely underwritten certain of its stock and bonds, subscribed for and issued to another telephone company in payment for the construction of the telephone plant, in which the issuing company had no further interest; and it is immaterial that he used a prospectus of the company to aid in his sales, since there was no evidence of agency; especially where no demand was made on the company until three years after the purchase.

TRIAL—WAIVER OF ERROR—NONSUIT. Error in denying a nonsuit is not cured by waiver of defendant in going into the defense without offering evidence to strengthen plaintiff's case.

Appeal from a judgment of the superior court for Spokane county, Jackson, J., entered November 23, 1914, upon the verdict of a jury rendered in favor of the plaintiff, in an action to recover money paid. Reversed.

*Post, Avery & Higgins*, for appellant.

*L. H. Prather*, for respondent.

ELLIS, J.—Action to recover money claimed to have been paid for certain bonds and stock which were never delivered.

[1]Reported in 157 Pac. 692.

It is alleged that, about March 30, 1911, at the instance of the Home Telephone & Telegraph Company of Spokane, Thaddeus S. Lane and Joshua B. Langley, plaintiff subscribed for $2,000 of first mortgage bonds of the company with $1,000 of its capital stock as a bonus, paying at the time $500, balance to be paid within ten months at his convenience; that, on June 13, 1911, he paid $500 more; that defendants Lane and Langley represented that they were acting for the corporation and that the bonds and stock would be delivered in proportion to the money paid; that defendants converted the money paid to their own use, to plaintiff's damage in the sum of $1,200; that he has demanded from the Home Telephone & Telegraph Company the bonds and stock or the return of his money, both of which were refused. Defendant Langley was never served with summons and did not appear. The other two defendants answered, denying the material allegations of the complaint. The cause was tried to the court and a jury. At the close of plaintiff's evidence, both defendants moved for a nonsuit, which was granted as to Lane but denied as to the Home Telephone & Telegraph Company. That company introduced evidence in defense. The jury returned a verdict against it for the sum of $1,211, and judgment was entered thereon. The defendant corporation moved for a new trial, which was overruled. It appeals, urging error in the refusal to grant a nonsuit, that plaintiff's case was not strengthened by defendant's evidence, and that the evidence as a whole is insufficient to sustain the verdict.

Respondent's evidence was permitted to take an extremely wide range in an endeavor to prove that Langley, through whom he subscribed for the purchase of the bonds and stock, was agent for appellant, Home Telephone & Telegraph Company, or at least that respondent, under the circumstances, had the right to so assume and that appellant is estopped to deny it. The circumstances relied upon by respondent are that one Taylor, with whom he was acquainted, told re-

spondent that he was working for the Home Telephone & Telegraph Company selling its bonds and stock; that Taylor on two occasions took him through the telephone company's building and showed him the plant; that on one of these occasions they chanced to meet Lane, the president of the telephone company, leaving the building, and Taylor introduced respondent as a prospective stockholder; that Lane said, "I hope you will join us," or something to that effect; that Taylor also introduced respondent to Langley, who had an office in the telephone company's building; that Langley showed him a prospectus describing the telephone plant, its business and prospects, and containing the names of its officers and some of their pictures, among them that of Lane, as its president, and one F. M. March, as its treasurer. This prospectus contained the statement that the securities of the company are in the form of stocks and bonds, the bonds in denominations of $100, $500 and $1,000, and that:

"The issue has been underwritten by J. B. Langley of Boston, Mass., who maintains an office at 167 South Howard street, in this city, where he deals exclusively in high grade public utility bonds of various kinds."

On Langley's window and letter heads appeared the legend, "J. B. Langley, Underwriter of high grade Public Utility Bonds." Taylor, as a witness for plaintiff, testified that, during the time when he was working with Langley in the sale of these securities, Langley also sold other securities besides those of the telephone company. Respondent testified that, when he agreed to take the bonds and stock, he signed some sort of paper called a subscription card. There is no evidence of its terms. Langley gave respondent a receipt for the $500 then paid, stating that it was,

"To be applied on his subscription of two thousand of the Home Telephone & Telegraph Company, five per cent first mortgage gold bonds, with ten shares, one thousand dollars, of said stock as a bonus. Balance of fifteen hundred to be paid by Mr. Fraser at his convenience within ten months."

This receipt was signed "Joshua B. Langley, Underwriter." The receipt for the second payment was of the same character, except that it stated the bonus as $1,000 of Interstate Consolidated Telephone Company's stock. Lane, who was called as a witness for respondent, testified in substance that, in 1909, the Interstate Consolidated Telephone Company, a Montana corporation, entered into a contract with the Home Telephone & Telegraph Company to complete its then partially constructed plant up to a capacity of four thousand telephones, in consideration of which the consolidated company was to receive, and did receive, $570,000 of the bonds of the home company, and the same amount of its stock from time to time as the work progressed; that he first met Langley in the fall of 1910, in Chicago; that he made a contract with Langley on behalf of the Interstate Consolidated Telephone Company, of which he was president, whereby Langley purchased from the consolidated company a certain number of the securities of the home company owned by the consolidated company, the agreement being that he was to take $10,000 worth each month for a certain period of time and pay for them; that it was to sell these securities; that Langley came to Spokane, and that he never sold any stock or bonds for the Home Telephone & Telegraph Company or had any connection with that company. This testimony is wholly uncontradicted. There is no evidence that Lane or any one else connected with the Home Telephone & Telegraph Company ever represented to the respondent that Langley was agent for, or in any manner represented that company in selling the stock and bonds. There is no evidence that Langley ever represented himself as an agent for that company. Upon this evidence, we are satisfied that a nonsuit should have been granted.

It is insisted that, because Langley, with the knowledge of the officers of the Home Telephone & Telegraph Company, represented himself as having underwritten its bonds, that company is estopped to deny that he acted as its agent in

selling the bonds. Unless an underwriter is, as a matter of law, an agent of the corporation whose bonds he underwrites, no matter with whom the underwriting contract is made, there is no evidence whatever in the record that Langley was in any sense an agent of the Home Telephone & Telegraph Company. There is nothing in the claim of estoppel, since respondent testified that, though he knew from the sign on Langley's window and from Langley's own statement to him that he held himself out as an underwriter, respondent himself did not know what that term meant, hence he could not have acted upon it as a representation that Langley was an agent for the home company. The first element of an estoppel is thus wanting.

An underwriting contract, aside from its use in insurance, is defined as follows:

"*Underwriting* means an agreement, made before the shares are brought before the public, that in the event of the public not taking all the shares or the number mentioned in the agreement, the underwriter will take the shares which the public do not take." 1 Cook, Corporations (7th ed.), p. 74, § 14.

The same definition applies to an underwriting of corporate bonds. 3 Bouvier, Law Dictionary (Rawle's 3d Revision), p. 3352. Underwriting, in this sense, is a purchase, together with a guaranty of a sale of the bonds. *Bone v. Hayes*, 154 Cal. 759, 99 Pac. 172. There is nothing in this form of underwriting which makes the underwriter, as a matter of law, agent of the company whose bonds or stock he underwrites. On the contrary, he is an ultimate purchaser of the stock, since he agrees to take what he does not sell. Obviously, in such a case, in selling the stock or bonds, he is acting solely in his own interest and to relieve himself from the necessity of taking them. Such is the necessary effect of the contract so defined, and respondent has cited no authority to the contrary.

Assuming, therefore, that Langley was in fact an under-writer of the bonds of the Home Telephone & Telegraph Company, the only evidence on the subject shows that he under-wrote those bonds for the Interstate Consolidated Telephone Company, which company had taken them in payment for the construction of the telephone plant. We find no merit in the argument that, because these bonds and this stock had already been subscribed for and had been issued to the Interstate Consolidated Company, they could not be underwritten for that company. As a matter of fact, neither the stock nor the bonds had ever been placed before the public, and the undisputed evidence shows that Langley's contract, whether it be called an underwriting contract or a purchase, was made with the Interstate Consolidated Company for the purpose and with the intention of placing the stock and bonds before the public for the first time, Langley agreeing to take them and pay for them to the extent of $10,000 a month for a given period. Whether he sold them or not was obviously his own affair and a matter in which the Home Telephone & Telegraph Company, at least, was in no sense interested. The fact that Langley, as an aid in selling the bonds, used a prospectus of the Home Telephone & Telegraph Company, which the evidence shows he got out at his own expense, had no tendency to prove an agency for that company. He was selling bonds and stock of that company. Naturally he would use the prospectus in advertising them, whether acting for himself or for another. It may be that this prospectus contains some misrepresentations; for instance, F. M. March was not the treasurer of the company, though the evidence shows that it was originally intended that he should be. That, however, is immaterial. The respondent did not sue for misrepresentation or fraud, but for the failure to deliver the stock and bonds. This also disposes of the claim that, because March indorsed one of the checks given by respondent in payment for this stock, the Home Telephone & Telegraph Company probably received the money. The un-

disputed evidence shows that Langley did not pay the proceeds of either check to the Home Telephone Company or to any of its officers.  The nonsuit should have been granted.

The evidence introduced on behalf of appellant in no sense tended to strengthen respondent's case.  It showed conclusively, and without contradiction, Langley's purchase of the stock and bonds from the Interstate Consolidated Telephone Company, and that that company had taken the stock and bonds in payment for the construction of the Home Telephone & Telegraph Company's plant.  The respondent made no effort to secure the bonds and stock from Langley, and made no inquiry from the Home Telephone & Telegraph Company until long after the plant had been completed and Langley had left Spokane.  The demand for the stock and bonds or the return of the money was made on the Home Telephone & Telegraph Company in May, 1914, over three years after the purchase.  If he had thought from the beginning, as he now claims, that he was dealing with the Home Telephone & Telegraph Company, it seems inexplicable that he did not make some demand or inquiry of that company earlier.

The evidence as a whole is insufficient to sustain the verdict.  By going into its defense, appellant waived the motion for a nonsuit only to the extent of allowing respondent to benefit by any evidence introduced by appellant or by himself in rebuttal.  Since no such evidence strengthened respondent's case, the error in refusing to grant a nonsuit is not cured.  Appellant still has the right to urge the motion for a nonsuit on appeal.  *Matson v. Port Townsend Southern R. Co.*, 9 Wash. 449, 37 Pac. 705; *Churchill v. Ackerman*, 22 Wash. 227, 60 Pac. 406; *Dimuria v. Seattle Transfer Co.*, 50 Wash. 633, 97 Pac. 657, 22 L. R. A. (N. S.) 471.

Judgment reversed and cause remanded for dismissal.

MORRIS, C. J., MOUNT, FULLERTON, and CHADWICK, JJ., concur.