In re HACKETT, HOFF & THIERMANN, Inc.

MARINE NAT. EXCHANGE BANK OF MILWAUKEE et al. v. KALT–ZIMMERS MFG. CO.

No. 5048.

Circuit Court of Appeals, Seventh Circuit.
April 18, 1934.

George Affeldt, Douglass Van Dyke, and Leon E. Kaumheimer, all of Milwaukee, Wis., for appellants.

I. A. Fish, J. H. Marshutz, and G. R. Hoffman, all of Milwaukee, Wis., for appellee Kalt-Zimmers Mfg. Co.

Before EVANS, SPARKS, and FITZ HENRY, Circuit Judges.

SPARKS, Circuit Judge (after stating the facts as above).

Two questions are involved in this appeal: Were the bonds negotiable instruments, and were the banks holders in due course? A negative answer to either question would prevent the banks' recovery and sustain the decision of the District Court.

In August, 1929, Kalt-Zimmers, a manufacturing concern located in Milwaukee, executed and delivered to the Hackett firm, a Wisconsin corporation, as trustee, a deed of trust conveying certain of its property as security for a bond issue of $115,000. The bonds contained the following provision:

"Said bonds are issued under and secured by a mortgage or deed of trust of even date herewith, duly made, * * * to which deed of trust reference is hereby made with the same effect as though recited at length here-in, for the description of the property mortgaged, the nature and extent of the security, the rights of the holders of the bonds, and the terms and conditions upon which the said bonds are issued, held, and secured, and may, before their fixed maturities, be declared at once due and payable, and the manner of prepayment before maturity."

The trust deed, after reciting the facts regarding a prior encumbrance of $55,000, of which $35,000 was still outstanding, provided that the trustee should first set aside sufficient bonds of the new issue or the proceeds thereof to satisfy the first mortgage, after which the proceeds of the remainder were to be used in the erection of a building on Kalt-Zimmers' premises, and the balance, if any, was to be at the disposal of Kalt-Zimmers. The bonds secured by the trust deed were to pass by delivery unless registered, and the trustee was given the right to acquire, own and deal in the bonds and coupons with the same rights as if it were not trustee. This trust deed was duly recorded in October, 1929.

The books of account of the Hackett firm with respect to this bond issue showed bonds unsold in the amount of $21,000, and cash on hand in the sum of $25,000. The Hackett firm was adjudicated a bankrupt on June 8, 1931. At that time it was indebted to the Marine Bank in the amount of $37,767, and to the West Side Bank in the amount of $72,019. To secure these sums the bankrupt had from time to time pledged various securities as collateral, including some of the bonds of Kalt-Zimmers. After the adjudication each of the banks filed with the referee a petition for permission to sell these various securities showing that the Marine Bank held Kalt-Zimmers' bonds in the amount of $6,000, and the West Side Bank, $8,500. Kalt-Zimmers filed its answer and cross-petition, setting up the facts as to the execution of the trust deed and the issuing of the bonds, alleging failure of consideration for the bonds, denying appellants' title to them, and praying delivery of the bonds to appellees. The answers of the banks to this cross-petition were substantially the same, and alleged that the bonds were negotiable, that the banks became their holders in due course with no notice of any infirmity in the bonds or defect of bankrupt's title, and further that they were delivered by Kalt-Zimmers to the bankrupt who was clothed with apparent authority to transfer and negotiate them.

The District Court did not pass on the question of negotiability, but held that the banks were not holders in due course; that even though the bonds were negotiable, that

alone was insufficient to excuse the banks from inquiry concerning the trustee's power to pledge them for what the banks knew was the trustee's personal indebtedness.

Appellants urge that this ruling contravenes a recent decision of the Supreme Court of Wisconsin, Pollard v. Tobin, 211 Wis. 405, 247 N. W. 453. That decision involved the identical question now under consideration, arising out of a transaction between the same bankrupt and another bank, in which there were pledged, under similar circumstances, bonds practically identical in form and terms with the bonds herein involved. There the court held that the bonds were negotiable, and that the bank was a holder in due course, although the evidence showed that they had been accepted as collateral after one of the members of the bankrupt pledgor had committed suicide, and after the bank had made inquiry of another bank in which the bankrupt had its principal checking account as to the effect of the suicide upon the firm's solvency. The bank apparently had been satisfied with the answer of the other bank that in fact the bankrupt was put in a stronger position by reason of the fact that it had carried insurance upon the deceased member, and that the bankrupt was solvent anyway. We would have supposed that under those facts the bank accepting the bonds as security for personal loans of the bankrupt would have been held to inquire as to the title of the bankrupt to the bonds and his right to pledge them, since the bonds showed on their face that the pledgor held them as trustee, and since they referred to the trust deed in which it was recited that the bonds were to be sold by the Hackett firm as soon as possible after delivery. It seems to us that those facts would have prevented the bank from asserting that it "had no notice of any defect in the title of the person negotiating" them, and would have necessitated a finding that the bank had knowledge of such facts that its action in accepting the bonds as a pledge amounted to bad faith under section 116.61 of the Wisconsin statutes.[1] In the case at bar we agree with the view of the District Court that " * * * the duty was cast upon the one to whom they were tendered, no matter how clearly their negotiability in case of attempted transfer in execution of a fiduciary power, or negotiation by sale in case of individual ownership, may otherwise appear from the instrument; that is to say: the fact of negotiability within limited range is not the sole determiner of a right of a trustee to transfer property once it appears clearly that an individual, and not a trust purpose is sought to be carried out. * * * The infirmity of the bank's position arises out of their knowledge that the bankrupt trustee was tendering the bonds for its personal benefit."

The District Court in reaching its conclusion relied on broad principles of equity forbidding trustees from dealing in trust property for their own benefit. The plain terms of the bonds stated that they were trust bonds, and that the holders' rights thereto were set forth in the deed of trust, which was made a part of the bonds by reference. Appellants, therefore, could not disregard that notice and innocently accept the bonds as a pledge of security for the trustee's personal debt to appellants, when in fact the trust deed gave no authority to pledge them in any manner. See Sanger v. Farnham, 220 Mass. 34, 107 N. E. 359; Brovan v. Kyle, 166 Wis. 347, 165 N. W. 382; Whitford v. Moehlenpah, 196 Wis. 10, 219 N. W. 361; Greene v. Greene, 19 R. I. 619, 35 A. 1042, 35 L. R. A. 790; Townsend v. Wilson, 77 Conn. 411, 59 A. 417; Colonial Trust Co. v. Brown, 105 Conn. 261, 135 A. 555. This principle was very clearly set out in Duncan v. Jaudon, 15 Wall. 165, 21 L. Ed. 142, which held that the duty of inquiry was imposed on a lender lending on stocks where the stock certificates disclosed a trust, and that notice to the cashier of a bank that the stock pledged was a trust stock was notice to the bank. The failure to perform that duty by appellants in the instant case, we think, amounted to bad faith on their part, as contemplated by section 116.61 of the Wisconsin Statutes. The same principle is supported quite generally throughout the states. See Shaw v. Saranac Horse Nail Co., 144 N. Y. 220, 39 N. E. 73; First National Bank v. National Broadway Bank, 156 N. Y. 459, 51 N. E. 398, 42 L. R. A. 139; Loring v. Brodie, 134 Mass. 453; Tuttle v. First National Bank, 187 Mass. 533, 73 N. E. 560, 105 Am. St. Rep. 420.

In 26 R. C. L. 1223, § 185, it is said:

"A pledge by a trustee, to secure his own debt, of what is known to be trust property, is prima facie unauthorized, and one taking such security is bound at his peril to ascertain whether the trustee has power to give it.

---

[1] "116.61. To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

Notice of the existence of a trust is, by all the authorities, held to impose the duty of inquiry as to its character and limitations. * * * So the term trustee in a stock certificate issued to the holder in his name 'as trustee' is sufficient to put persons on inquiry as to the holder's right to pledge them for his own debt, and a pledgee taking them without inquiry does so at his peril. And evidence that stock certificates, issued in the name of one as trustee, and by him transferred in blank, are constantly bought and sold in the market without inquiry, is inadmissible, as varying an established rule of law. (Citing Shaw v. Spencer, 100 Mass. 382, 97 Am. Dec. 107, 1 Am. Rep. 115)."

We do not overlook the fact that the pronouncement just quoted deals with a certificate of stock which was issued in the name of the trustee, and by him transferred, while the bonds in the instant case were payable to bearer. Kalt-Zimmers, however, are relying on more than mere knowledge on the part of appellants that a trust existed. There is the additional fact that appellants knew or should have known the contents of that trust deed and that it gave no authority to pledge the bonds, and we think that under those circumstances appellants accepted the pledges at their peril. If appellants here admitted having read the trust deed prior to accepting the pledges, thus admitting a knowledge of the trustee's lack of power to pledge, we suppose it would not be contended that they accepted the pledge in good faith merely because the bonds were negotiable. But we think a knowledge of the contents of the trust deed must be imputed to appellants, because they were virtually told by the language of the bonds to read the trust deed in order to ascertain the rights of the trustee as holder.

In Cordova v. Hood, 17 Wall. (84 U. S.) 1, 21 L. Ed. 587, Shields had sold and conveyed a tract of land in Texas, with covenants of warranty to Hood, upon receipt of the purchase price. The deed showed that the purchase price was not fully paid, and under the laws of Texas, a vendor's lien enured to the grantor. Shields subsequently assigned Hood's negotiable note, which had been given as part payment of the consideration, to Bartlett. Hood later sold the land to Scroggin and Hanna. Bartlett thereafter was adjudicated a bankrupt and his assignee in bankruptcy, Cordova, filed a bill to enforce the vendor's lien against Scroggin and Hanna, who answered that they were good faith purchasers without notice of any lien. The court said at page 8:

"* * * The deed from Shields to Hood informed them that the consideration was unpaid. It imposed upon them the duty of inquiring whether it remained unpaid when they were about to make their purchase. Wherever inquiry is a duty, the party bound to make it is affected with knowledge of all which he would have discovered had he performed the duty. Means of knowledge with the duty of using them are, in equity, equivalent to knowledge itself. Had inquiry been made of the vendor, it would easily have been ascertained that a portion of the purchase-money remained unpaid. Inquiry of Hood, the debtor, if any such inquiry was made, was an idle ceremony. The deed pointed to the person from whom purchasers from Hood were bound to seek information."

In the instant case appellants knew the bonds were trust bonds and that the pledgor was the trustee. They further knew, as a matter of law, that the trustee could not pledge the bonds, as security for its personal debts, unless the deed of trust expressly gave that power. The bonds pointed to the trust deed as the source of power from which appellants were bound to seek information on that subject, or they could have acquired the same information had they inquired of Kalt-Zimmers. It is quite true that under the trust deed the trustee had the right to purchase the bonds, and if it had done so, it could have pledged them. But it had not purchased them, and appellants made no inquiry concerning that fact. There were present the means of knowledge and the duty of using them, and as stated in the Hood case, they were equivalent to knowledge itself. If this does not constitute actual knowledge within the meaning of the Hood case, it presents a very strong case of constructive knowledge which in our opinion amounts to bad faith under the Wisconsin statute.

The federal courts are not bound by a decision of a state court in the interpretation or application of a provision of a uniform law contrary to the weight of authority as established by decisions of other states. Commercial Nat. Bank v. Canal-Louisiana Bank & Trust Co., 239 U. S. 520, 36 S. Ct. 194, 60 L. Ed. 417, Ann. Cas. 1917E, 25. We think the decision of the Wisconsin Supreme Court in the Tobin case is contrary to the weight of authority throughout the states. In that case the court was not confronted with ambiguity of statutory terms, nor are we. The language of the statute is quite plain. The question there, as here, is whether appellants had knowledge of such facts that their action in taking the bonds as pledges for the

trustee's personal obligations amounted to bad faith. It is true we find no case in which the facts are identical with this or the Tobin case, but the principles of law hereinbefore referred to we think are directly in point and are supported quite generally by the state courts including Wisconsin. Those principles, of course, would not abrogate the plain provisions of the Wisconsin Negotiable Instruments Statute; but we find nothing in that act which seems to be inconsistent with those principles, nor any indication of intention to modify or abrogate them, but on the contrary, the statute seems to reiterate them, for it recognizes a defect in title of a negotiable instrument where it is taken in bad faith.

It is contended by appellants, however, that the trustee purchased the bonds from Kalt-Zimmers. We think that was not the intention of the parties. If that were true there was no occasion for inserting in the trust deed the clause permitting the trustee to sell and purchase the bonds without accounting for the profit. It is also contended by appellants that the preliminary instrument signed by the trustee and Kalt-Zimmers constituted an underwriter's agreement and that an amount equal to the face of the bonds was loaned by the trustee to Kalt-Zimmers. This agreement was in the form of a proposal by the Hacket firm, accepted by Kalt-Zimmers, and it contained in general terms the plans, terms, and conditions upon which the bonds should be issued. While it was executed prior to the trust deed and purported to be a proposal for a loan, yet it is quite necessary to consider both the proposal and the trust deed in arriving at the parties' intention as to the character of the entire transaction. When these are thus considered it is apparent that there was no intention to create a loan from the Hackett firm, and if there were such intention in the proposal it was frustrated by the terms of the trust deed which was subsequently executed. It has been held that an underwriter's contract is not an agreement to loan money. Busch v. Stromberg-Carlson Tel. Mfg. Co. (C. C. A.) 217 F. 328; In re Danville Hotel Co. (C. C. A.) 38 F.(2d) 10.

It is quite clear that there was no underwriter's agreement existing between Kalt-Zimmers and the Hackett firm, because there was no agreement on the part of the Hackett firm to take and pay for the bonds which the public did not take. Fletcher's Cyclopedia of Corporations, Vol. I, page 950, defines underwriting as an agreement, made before the shares are brought before the public, that in the event the public does not take all the shares or the number mentioned in the agreement, the underwriters will take the shares which the public does not take. See also Vol. I Cook on Corporations (7th Ed.) par. 14, page 74; Fraser v. Home Telephone & Telegraph Co., 91 Wash. 253, 157 P. 692. The preliminary contract and the trust deed constituted merely an agreement on the part of the Hackett firm to sell Kalt-Zimmers' bonds for a stated commission, and for that purpose it accepted them in trust limited in title by the terms of the trust deed. Whether a valid consideration moved to the trustee from appellants is not now material, because it bargained with them to do a thing which they knew it had no right to do, and for this they can not be held holders in due course.

Decree affirmed.