RENNIE *v.* PENTAGON REFINING CO.

DUCKWORTH *v.* SAME.

SMITH *v.* SAME.

1. CORPORATIONS—UNDERWRITERS—INDEPENDENT CONTRACTORS.
   An underwriter of a corporation's stock, when acting solely as such in promoting the sale of its stock, is an independent contractor.

2. SAME—PRINCIPAL AND AGENT—CONTRACTS—SALE OF STOCK.
   In actions by persons, who claimed to have left cash and securities with brokerage concern to purchase a specified number of units of stock in defendant company, on theory broker acted as agent of defendant for sale of its stock, whether relation of broker to defendant is that of principal and agent or broker was an independent contractor is determined by contract between it and corporation as viewed in the light of surrounding circumstances.

3. PRINCIPAL AND AGENT—CONTRACTS—BROKERS—EVIDENCE.
   Contract between defendant corporation and broker whereby latter undertook to sell units of the former's stock for a commission as exclusive sales agent in this State *held*, to warrant finding that relation of principal and agent existed, in actions by plaintiffs, would-be purchasers of defendant's stock, who left cash and securities with broker but received neither stock nor deposits, and such finding is fortified by fact that corporate officers assisted broker in prospective sales to plaintiffs and stock was to be issued by defendant to purchasers secured by broker upon order of escrow depository bank wherein broker was to deposit purchase price less commission.

Appeal from Wayne; Campbell (Allan), J. Submitted April 14, 1937. (Docket Nos. 64, 65, 66, Cal-

---

* Continued from Vol. 279.

endar Nos. 39,416, 39,417, 39,418.)   Decided May 21, 1937.

Separate actions of assumpsit by Bert A. Rennie, Alfred Duckworth, and William G. E. Smith against Pentagon Refining Company, a Michigan corporation, for sums due for delivery of money or stock to a brokerage agent. Cases consolidated for trial and appeal. Judgments for plaintiffs. Defendant appeals. Affirmed.

*Baillie & Cary,* for plaintiffs.

*John N. Muirhead* (*Carl Huhn,* of counsel), for defendant.

NORTH, J.   The defendant herein is a Michigan corporation with authorized preferred stock in the amount of $125,000 in shares of the par value of $10 each, and 100,000 shares of no par stock. The Michigan securities commission authorized the sale of 9,770 shares of preferred stock and 39,080 shares of no par stock in units of one share of the preferred stock and four shares of the no par stock at a price of $10 per unit, such authorization being upon certain conditions imposed by the order of the commission. Thereupon the defendant entered into a contract with Norman Berry & Company, a Michigan corporation, doing a brokerage business, whereby the brokerage company was given exclusive authority to sell the stock in accordance with the order of the securities commission. A representative of the brokerage company contacted each of the plaintiffs in these three cases which are combined and submitted as one. It is the claim of the plaintiffs that they turned over to the broker's agent either cash or

stock in other companies which was to be converted into cash and the proceeds thereof were to have been used to purchase a specified number of units of the stock in defendant company. The stock so placed by the respective plaintiffs with the agent of the brokerage company was sold or at least not accounted for; but the purchased units of stock in the defendant company were not delivered by the broker or its agent to the respective plaintiffs, nor was plaintiffs' money or property otherwise accounted for. The license of the brokerage corporation to operate as such was revoked and subsequently it went into bankruptcy. In each of these suits the plaintiff seeks recovery from the defendant company for the money or stock delivered to the brokerage agent. In the circuit court, the cases being tried without a jury, each of the plaintiffs had judgment, and defendant has appealed.

The theory upon which plaintiffs recovered is that the brokerage corporation acted as the agent of the defendant company in making the sale of its stock and that defendant as the principal is liable for plaintiffs' losses. On the other hand the theory of the defense is that the brokerage corporation instead of acting as an agent was acting in the capacity of an independent contractor. This presents the controlling question for review.

At the outset it should be noted that by the terms of its contract with defendant the brokerage company did not become an underwriter of the stock. The following authorities hold that an underwriter of a corporation's stock when acting solely as such in promoting the sale of its stock is an independent contractor: 1 Fletcher, Cyclopedia Corporations (Perm. Ed.), § 230; *Fraser* v. *Home Telephone &*

*Telegraph Co.*, 91 Wash. 253 (157 Pac. 692). But this proposition of law is not at all pertinent in the instant case because Norman Berry & Company did not underwrite the stock. We must look to the contract between the defendant company and the brokerage corporation to determine, in the light of surrounding circumstances, whether the latter acted as the agent of the former or as an independent contractor. We quote the contract in part:

"Whereas, the first party has an authorized capital of 12,500 shares of $10 par value seven per cent. preferred stock, and 100,000 shares of no par value common stock   *   *   *   and

"Whereas, the first party is desirous of selling, for the purpose of acquiring additional capital funds, 9,770 shares of its remaining authorized but unissued $10 par value seven per cent. preferred stock, together with 39,080 shares of its remaining authorized but unissued no par value common stock   *   *   *   and

"Whereas, the second party is a securities dealer and broker   *   *   *   and

"Whereas, the first party desires to have the second party undertake the sale of the above described   *   *   *   stock of the first party to residents of the State of Michigan only,   *   *   *

"The first party (defendant)   *   *   *   agrees:

"To and hereby does appoint the second party (the brokerage company) *as its sole and exclusive sales agent* for the sale to Michigan residents only of the aforedescribed   *   *   *   stock   *   *   *   (and)

"To pay the second party a commission for the sale of such units of its stock   *   *   *

"The second party agrees:

"To and does hereby accept its appointment *as the sole and exclusive sales agent* of the first party for the sale of the aforedescribed   *   *   *   stock   *   *   *   (and)

"To diligently endeavor to sell the aforedescribed * * * stock * * * and to pay over * * * the net proceeds on the sale of such * * * stock as may have been sold on the dates specified below."

Since it conclusively appears that the broker sold or converted the stocks placed in its hands by the respective plaintiffs, as between the plaintiffs and defendant, this case is in the same status as though plaintiffs had placed cash in the broker's hands for the purchase of stock in defendant corporation.

The terms of the contract in part above quoted and the nature of the transactions contemplated by the contract, justify the determination of the circuit judge that the broker was merely acting as an agent of defendant, rather than as an independent contractor. Stripped of its details, all the contract provides is that in consideration of a 15 per cent. commission to be paid, the brokerage corporation agrees "to diligently endeavor to sell" the designated stock of defendant company. The relation between the two was not unlike that of a real estate agent who for an agreed commission undertakes to sell real property for the owner. Clearly such an undertaking expressly establishes the relation of principal and agent. The contract between defendant and the broker designates the latter as "sales agent" of the former. As bearing upon the character of the relation between the broker and the defendant corporation it is somewhat important to note testimony which discloses that prior to purchasing stock in the defendant company two of these three plaintiffs went to its plant and there met a Mr. Muirhead, who from the record appears to have been president or vice-president of defendant company, and he rather actively assisted in the prospective sales to these two men. There is no claim that Norman Berry &

Company ever held in its own right any stock of the defendant company. Instead the stock of the defendant company was to have been issued by that company to the purchasers secured by Norman Berry & Company upon the order of the escrow depository bank wherein the broker was to deposit 85 per cent. of the purchase price received for the respective sales.

The finding of the circuit judge that Norman Berry & Company was acting as an agent of the defendant rather than an independent contractor, is sustained by this record. No other material questions are noted in appellant's brief. The judgment entered in the circuit court is affirmed. Costs to appellees.

FEAD, C. J., and WIEST, BUTZEL, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.