Rose **ROTHENBERG**, Plaintiff,

v.

**Richard T. SILBERMAN et al.,**
Defendants.

No. 67 Civ. 3038.

United States District Court
S. D. New York.

Jan. 10, 1968.

Kaufman, Taylor, Kimmel & Miller, New York City, for plaintiff, Stanley L. Kaufman, and Shephard S. Miller, New York City, of counsel.

Chadbourne, Parke, Whiteside & Wolff, New York City, for defendants, Robert A. Howes, Edward C. McLean, Jr., and Howard S. Sussman, New York City, of counsel.

MANSFIELD, District Judge.

■ In this stockholders' suit pursuant to § 27 of the Securities Exchange Act of 1934 for recovery of "short-swing" profits allegedly realized by defendants through purchase and sale of 331,500 shares [1] of the stock of Foodmaker, Inc. ("Corporation" herein) within six months in violation of § 16(b) [2] (15 U.S.C. § 78p(b)), defendants move to dismiss the complaint pursuant to Rule 12(b) (2) and (3), F.R.Civ.P., on the ground that venue in the Southern District of New York is improper or, in the alternative, for transfer to the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1404(a). The motion is granted.

Plaintiff, a New York resident, is a stockholder of the Corporation, which is organized under Delaware law and has its principal place of business in San Diego, California. Although the Corporation, a nominal defendant, is qualified to do business in New York, it has no office and transacts no business in this District.

The other defendants are Foodmaker Company ("Partnership" herein), a California limited partnership located in San Diego, and nine individuals, all of whom are California residents and members of the Partnership, and some of whom are also officers and directors of the Corporation. All defendants were served with process in California.

1. Although the complaint alleges 350,000 shares, the moving affidavits disclose that the number was actually 331,500 shares.

2. "(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. * * *"

The "purchase" of the 331,500 shares under attack took place entirely in California. This "purchase" consisted of the Partnership's acquisition from the Corporation on June 28, 1967 of 530,000 shares of the Corporation's common stock (including the 331,500 shares later sold) in exchange for 500,000 shares of stock of Foodmaker Commissary, Inc., a Delaware corporation having its principal place of business in San Diego, pursuant to an Agreement and Plan of Reorganization dated March 31, 1967. This Agreement was executed in California by the Corporation, Partnership and individual defendants and provided that it "is being delivered and is intended to be performed in the State of California and shall be construed and enforced in accordance with the laws of such state." In accordance with the Agreement, the 530,000 shares of the Corporation's stock were placed in escrow in California under an Escrow Agreement executed by the parties there, pending performance of certain conditions there, including the obtaining of necessary permits from different California State departments and commissions, and the approval of the holders of a majority of the Corporation's stockholders, which was given at a stockholders' meeting held in San Diego on May 24, 1967.

The "sale" of the 331,500 shares also took place entirely in California, pursuant to a plan (contemplated by the parties when the Agreement and Plan of Reorganization was executed on March 31, 1967) to sell 450,000 shares of the Corporation's stock (including the 331,500 shares) to a group of underwriters represented by Hayden, Stone, Inc., who purchased the shares with a view to distributing them to the public. Accordingly a registration statement was filed with the Securities and Exchange Commission, which became effective July 6, 1967, and on that date, in San Diego, the Corporation entered into and executed a "firm-commitment" type Underwriting Agreement with Hayden, Stone, Inc. as the representative of a group of underwriters, under which the underwriters obligated themselves to buy the 450,000 shares at an agreed price, $20.45 per share, regardless whether they would be successful in reselling the securities to the public.

Pursuant to the Underwriting Agreement the closing of the sale of the 450,000 shares to the underwriters took place in San Diego on July 16, 1967, at which time certificates for the stock were delivered to Hayden, Stone in exchange for its check, drawn on the United States National Bank of San Diego in the sum of $9,202,500.[3] The Transfer Agent was the United States National Bank, and the Registrar was the First National Bank of San Diego, both of California.

Upon completion of the sale in California, the underwriters offered the stock publicly, with some of the shares being offered in New York, with the result that of the 450,000 shares offered by them, about 94,000 (presumably including shares purchased by plaintiff) were sold in New York and 145,000 in California. By that time, however, the alleged "short-swing" purchase and sale by the defendants had been consummated in California, and the underwriters were the unconditional owners of the securities sold by them to the public.

■ Section 27[4] provides that a suit to enforce liability for violation of

---

3. Shortly before the California closing the Corporation permitted the underwriters in New York City, as a convenience, to inspect the forms of the stock certificates that might be used by them if, as, and when the sale should be consummated in California, so that the underwriters could check and count the certificates for future use. However, the sale and delivery of the 450,000 shares (including the 331,500 which are the subject of the present suit) took place entirely in California, and no certificates were delivered by the Corporation in the Southern District of New York.

4. "Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations there-

§ 16(b) may be brought in any federal district "wherein the defendant is found or is an inhabitant or transacts business" or "wherein any act or transaction constituting the violation occurred". Defendants are neither found in, nor inhabitants of, nor transact business in, this District. Venue therefore must depend on whether any act or transaction constituting the violation occurred here. Since the violation of § 16(b) consists of the insider's purchase and sale of securities of the issuer within the prohibited period, venue on this basis would exist only if some part of the acts, conduct or transactions constituting the purchase or sale under attack took place in the Southern District of New York. Gratz v. Claughton, 187 F.2d 46, 49 (2d Cir. 1950), cert. denied, 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353 (1951); Peyser v. Meehan Fund, Inc., 264 F.Supp. 1 (S.D.N.Y.1966); Blau v. Lamb, 20 F.R. D. 411, 414 (S.D.N.Y.1957) (dictum).

■■■ The terms "purchase" and "sale", as those terms are used in § 16 (b), embrace such operative acts as the making and transmittal of an offer or order to purchase or sell the securities, the acceptance of the offer, the confirmation, the record transfer of the security, the delivery of certificates, payment, and the execution by the parties of the purchase and sale instruments. If any part of any of these operative acts takes place within the forum district, a basis exists for venue under § 27. It is unnecessary to show that all of a series of purchases and sales took place in the district, Blau v. Lamb, supra, or that both the purchase and the sale occurred there, Peyser v. Meehan Fund, Inc., supra. It is sufficient to show that some act constituting a part of one purchase, or of one sale, took place within the district, Blau v. Lamb, supra, even though the order to purchase or sell might emanate from elsewhere. Grossman v. Young, 70 F.

Supp. 970 (S.D.N.Y.1947). Compliance with § 27, however, requires that *some* act forming part of the purchase or sale occur in the forum district. Otherwise the venue provision would become a dead letter. Thus in Blau v. Lamb, supra, it was said that:

"If it should there appear with respect to any defendant that he had indulged in no short swing transaction within this district the claim with respect to him would have to be denied even though it were proved that he profited from short swing transactions elsewhere." 20 F.R.D. at 414.

Faced with the fact that the acts or transactions constituting the purchase and sale in the present case took place entirely in California, plaintiff contends that since the underwriters, in their purchase of the securities in California, were acting with a view to distributing the securities in New York, and later did sell some of the securities in New York, their conduct amounted to "an act or transaction constituting the violation". If Hayden, Stone had agreed to act as agents for any of the defendants in selling the stock in New York, In re Hackett, Hoff & Thiermann, Inc., 70 F.2d 815, 819 (7th Cir. 1934); SEC v. Investment Bankers of America, Inc., 181 F.Supp. 346, 348 (D.D.C.1960); Rennie v. Pentagon Ref. Co., 280 Mich. 1, 273 N.W. 325, 327 (1937), plaintiff's contention might have some merit, since there would then at least be some conduct, or act or transaction, constituting a part of the violation in this District. The underwriters, however, including Hayden, Stone, gave a firm commitment to purchase all of the 331,500 shares in California, and the sale was completed when the securities passed and the price was paid there. The underwriters thus became the outright buyers of the stock in California, and their purchase was not contingent in any way on the success of their later distribution or

under, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts

business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found."

upon the securities being resold in New York. See Dale v. Rosenfeld, 229 F.2d 855, 857 (2d Cir. 1956); In re Danville Hotel Co., 38 F.2d 10, 18 (7th Cir. 1930); I Loss, Securities Regulations, pp. 163–172 (1961). Having made a firm commitment to purchase the stock, followed by payment and delivery of certificates in the names of the underwriters in California to Hayden, Stone as representative of all of the underwriters, the latter were free to do as they pleased with the stock, without any requirement that they sell it in New York.

 Plaintiff next contends that the Corporation's retention of New York legal counsel to advise it in connection with the California transactions, together with telephone communications, correspondence and visits to New York is sufficient to establish venue. It appears that New York counsel was retained by the Corporation and furnished it and the underwriters with legal opinions on various aspects of the underlying agreements, including the validity of the Agreement and Plan of Reorganization, the legal existence and authorized capital of the Corporation, the legal validity of the issuance of the shares to be exchanged, and the accuracy and validity of the registration statement and prospectus. This legal groundwork undoubtedly necessitated telephone calls and correspondence between New York and California, as well as visits here by representatives of the Corporation. In support of its contention that such activities in New York provide a basis for venue under § 27, plaintiff relies upon decisions holding that a showing of similar use of interstate facilities, or of the mails, in

fraud actions charging violations of § 10(b) of the Exchange Act, establishes venue in the district into which an interstate communication extends. Matheson v. Armbrust, 284 F.2d 670 (9th Cir. 1960); Hooper v. Mountain States Sec. Corp., 282 F.2d 195, 204–205 (5th Cir. 1960), cert. denied, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961); United States v. Riedel, 126 F.2d 81, 83 (7th Cir. 1942); Kane v. Central American Mining & Oil, Inc., 235 F.Supp. 559, 565 (S.D.N.Y.1964); Clapp v. Stearns & Co., 229 F.Supp. 305, 307 (S.D.N.Y.1964); Townsend Corp. of America v. Davidson, 222 F.Supp. 1, 3–4 (D.N.J.1963); Dauphin Corp. v. Redwall Corp., 201 F.Supp. 466, 469–70 (D.Del.1962). The elements of a violation of the anti-fraud sections of the securities laws, however, are materially different from, and broader than, those constituting a violation of § 16(b). In order to establish a violation of § 10(b), the plaintiff must prove, as an essential element of the violation, the use of mails or of interstate facilities in connection with the purchase of stock. Hooper v. Mountain States Sec. Corp., supra; Matheson v. Armbrust, supra.[5] Proof of use of the mails or of interstate facilities in such actions is required for the reason that the statute prohibits fraud in connection with dealings in any securities, whether or not they are registered with the Securities Exchange Commission or traded on an SEC-regulated exchange. Securities Exchange Act, § 10 (b), 15 U.S.C. § 78j(b); III Loss, Securities Regulations, p. 1467 (1961).

"What made this evil scheme a violation of the statute and the regulation was that the defendants directly or in-

5. § 10(b), 15 U.S.C. § 78j expressly states "it shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\* \* \* \* \*

"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or

contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. June 6, 1934, c. 404, § 10, 48 Stat. 891."

The same categorical requirement that mails or interstate facilities be used is expressly found in the fraud provisions of § 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and § 206 of the Investment Advisors Act, 15 U.S.C. §; 80b–6.

directly used means or instrumentalities of interstate commerce or of the mails 'in connection with the purchase' of the stock from Consolidated. * *

"We think that any use of instrumentalities of the mails or other interstate facilities made within the forum district constituting an important step in the execution of the fraudulent, deceitful scheme or in its consummation is sufficient." Hooper v. Mountain States Sec. Corp., 282 F.2d 195, 204–205 (5th Cir. 1960)

Proof of use of the mails or of interstate facilities, on the other hand, is not required to establish a violation of § 16(b). It is sufficient merely to prove an insider's purchase and sale, within the prohibited period, of securities required to be registered, even though the purchase and sale may take place entirely in one state and privately, without use of an SEC-regulated exchange. Smolowe v. Delendo Corp., 136 F.2d 231, 148 A.L.R. 300 (2d Cir.), cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943).

Decisions upholding venue in fraud suits on the basis of some use of an interstate instrumentality are of doubtful value as analogies in determining the existence of venue in a § 16(b) suit for the further reason that the concept of "fraud" under the securities acts is a broad one, SEC v. Capital Gains Research Bureau, 375 U.S. 180, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963), embracing numerous communications, each of which may be an "important step" in the violation,[6] as distinguished from the relatively simple, clearly definable conduct constituting the "purchase" and "sale" required to violate § 16(b). In the present case none of the conduct in this District, including the retention of legal counsel and such counsel's rendering of advice with respect to the form and contents of the agreements between the parties, constituted a part of the alleged purchase and sale, all of which took place entirely in California.

Even if venue existed in this District, the balance of convenience would weigh heavily in favor of transferring the action to the Southern District of California. The 11 defendants all reside in California. The underlying transactions took place there. The headquarters, books, and records of the Corporation, the Partnership, and Foodmaker Commissary, Inc. are all located there. The record indicates that issues will be raised by the defendants not only as to whether the purchase and sale violated § 16(b), but also as to the value of the 530,000 shares of the Corporation's stock exchanged on June 28, 1967 for the 500,000 shares of Commissary stock pursuant to the Agreement and Plan of Reorganization, which is expressly governed by California law; and that these issues may require extensive proof from California sources, since it does not appear that the Corporation's stock was traded prior to its registration with the SEC, which became effective on July 6, 1967, or that the Commissary stock was traded on any exchange. Resolution of these issues will require records located in California and probably the testimony of corporate witnesses. The situation is therefore different from the case frequently encountered where the proof required from the distant forum is essentially documentary in nature, imposing a limited burden on

6. E. g., Dauphin v. Redwall Corp., 201 F. Supp. 466 (D.Del.1962) (acts within the district found to be "integral parts of the fraud" and "of material importance to the sale of the Pineda note"); Clapp v. Stearns & Co., 229 F.Supp. 305 (S.D. N.Y.1964) (telephone call found to be "part and parcel of the alleged violation"); Matheson v. Armbrust, 284 F.2d 670, 673 (9th Cir. 1960) (telephone call "constituted a direct use of an instrumentality of interstate commerce 'in' the fraudulent scheme 'thereafter' practiced"); Townsend Corp. of America v. Davidson, 222 F.Supp. 1 (D.N.J.1963) ("numerous acts which are alleged to constitute violations of the Act occurred in New Jersey"); Kane v. Central American Mining & Oil Co., 235 F.Supp. 559 (S.D.N.Y.1964) (stockholders' meeting "arranged by mail, drawing out-of-state shareholders to this district, and with the alleged purpose of securing to defendants the fruits of their fraudulent scheme" deemed an important step in the fraud).

the defendants located there. See Franklin v. Blaylock, 218 F.Supp. 261 (S.D. N.Y.1963); Blau v. Lamb, supra. Here the prospective hardship of a possible migration of defendants and their witnesses from California to New York, as contrasted to the likelihood that plaintiff will not even be required to appear in the proceedings, would call for exercise of discretion in favor of transfer. Sher v. Johnston, 216 F.Supp. 123 (S.D.N.Y. 1963).

Accordingly, defendant's motion to dismiss the action is granted without prejudice to plaintiff's institution of the suit in the Southern District of California, on condition that if suit is instituted in that district within sixty days, defendants will consent to appear generally without necessity for further service of process.

So ordered.